Good morning, your honors. As I assume the court is aware, this is a case involving the whether a specific New York state statute, misdemeanor reckless endangerment, is a crime involving moral turpitude categorically. I'd just like to review a little bit of the history though of the cases as they relate to the briefing in this case, the timing of the briefing. As I'm sure the court is aware, the matter of Silva Trevino No. 1, which was decided in 2008 by the board, laid out the rules for the categorical analysis, modified categorical, which doesn't really apply here, a standard for what crime involving moral turpitude would be, particularly in a case like this where there's no intentional conduct, it's some other level of vacated that decision based on confusion among several of the circuits about how to actually apply it. In September of 2015, I filed my brief to the BIA within the status that Silva Trevino had been vacated, so what I did was analyze the statute based on some of the cases that I had used in front of the IJ, which were the cases like Falu and Leal, the Third Circuit case in NAPIC, sort of describing what aggravating factor might make a reckless crime something that involves moral turpitude even though normally for something to involve moral turpitude it should be an aggravating factor. In October of 2016, the board issued Silva Trevino 3, in which they essentially reinstated most of what Silva Trevino No. 1 had said, came up with a solution for the conflict among the circuits on whether to apply what was called a realistic probability test or a minimal conduct test, and reinstated or restated the test for whether something is a crime involving moral turpitude of being the combined elements of some level of scienter coupled with reprehensible conduct, that reprehensible conduct being defined in the pretty bad conduct. And in a sense, that was supposed to resolve the issue of where you had negligent, reckless, depraved, indifferent conduct, anything short of intentional conduct, how you might apply that to the idea that something could be a crime involving moral turpitude. About three weeks later, the board then issued the decision in this case without suggesting that maybe the parties should re-brief it based on the issuance of the decision in Silva Trevino 3, which had of course reinstated a set of rules which the Attorney General had then vacated. So it seems to me one easy solution here would be to remand to the BIA to just suggest that they do that, that they reconsider it and allow the parties to brief it in that context. Instead, what the board did... Excuse me, is there anything that you can think of that you would say to improve your situation under those circumstances? Well, I would give them this brief because under the realistic probability test, which they say is what our circuit follows, I suggest actually that under the F. Theistos case, which I have trouble pronouncing but it's cited on page 9 of our brief, that we actually have kind of a combination of minimal conduct and realistic probability. But under the application of the realistic probability test, you look at what cases have actually been prosecuted by the jurisdiction that has the criminal jurisdiction, in this case, New York State, in order to see whether there's any case that's been prosecuted that would not be a crime involving moral turpitude. And under the indivisible rule, this is an indivisible statute, if there's any case, then that statute itself categorically is not a crime involving moral turpitude. Correct. That's why I cite several New York State cases. How would that help you? But those cases that you've cited in New York, because eminence is no longer required, don't seem to be problematic from the government's perspective, at least. I mean, you have the doctor who delays reporting a particular problem. You have the injunction against the disregard of the union, of a particular injunction that keeps the fireman from acting. All of those involve very serious issues. Right. But what they don't involve is reprehensible conduct. They define the reprehensibility of the conduct, again, based on a state of mind. And one of the examples is the police officer who opens his car door and hits a bicycle with a kid on it. The conduct of opening a police car is not reprehensible. The conduct of going on strike is not reprehensible. Even the omission of conduct by the doctor. You don't, I mean, I guess maybe we have a different perspective on that. If you go on strike. They're all debatable. Contrary to. A moving vehicle. And the strike, as New York courts explained, was a prohibited strike and it endangered eight million people. And so I understand those cases to basically be saying that the conduct was reprehensible. I think what they're saying is that the conduct is prosecutable under this statute, even though it's essentially more like negligent conduct. For example, the cleaning of the petroleum tank, which was an obligation by that particular. Well, what was negligent? He can open the car door. What he should be doing is watching cops. Intentional disregard. It's intentional disregard of a risk. That's what that's what recklessness is. And it amounts to criminality under those circumstances. So there's an intent element. It's just that it's the disregard of the risk. And it seems to me that you've got the cases that you seem to be relying on or go the other way in terms of the intentional disregard of the risk and go in favor of the other side. I just don't think so, because again, if you look at the definition from the original Silva Trevino, even restated in the Richards case that the government provided a couple of weeks ago from this circuit, the the conduct has to be reprehensible. And what we're dealing with is an ambiguous situation where the conduct itself under normal circumstances wouldn't be until you add the the intent element, the reckless or the intent element. Because again, there's I would say when police officers are running to a scene, they may well open their car car door while the car is still in motion. I would say that that a petroleum company that's trying to clean the tanks of its storage facilities or transport facilities has an obligation to do it. That in itself doesn't rise to anything like the standard of malum in say and reprehensible conduct. What does is to the extent that it's and to an extent there has to be some point where it's it wouldn't be a crime involving moral turpitude. I mean, if something could be very reprehensible, like shooting a gun into a crowd, and that would be malum in say. Something else, like leaving a gun around in a house where there not sure that it would be technically the crime involving moral turpitude as defined in terms of the level of reprehensible conduct. So at the very least, it seems to me. Comes to us because we are deferring to the BIA's own definition of moral turpitude. Which that I agree to. But the court does not. They've ever said that reprehensible conduct has to somehow equate to malum per se at common law. I mean, I'm not even sure that some of the examples you cite wouldn't qualify, but they are now taking a definition. They've said reprehensible conduct and they're telling us that it applies to a circumstance such as this. And you're saying, oh no, New York doesn't always require reprehensible conduct. And we're suggesting to you that the cases you're citing in support of your argument could well be thought of as reprehensible conduct. Now why are we not following your argument? I guess because there has to be a level of conduct which simply isn't reprehensible enough to be considered a crime involving moral turpitude. Because the level of reprehensibility is a pretty high standard. And they do use the words malum and say, and things like that in defining them. What we get there is that the conduct has to endanger life. Or create such a risk of harm as to be, you know, protracted impairment, disfigurement. So not every push or shove is going to be reprehensible conduct. But if you violate 120.20 by risking that kind of serious physical injury, why can't the board say that fits within our reprehensible conduct definition? Because it seems to me that in some of these cases at least that have been prosecuted in New York State, even though under the law certainly they can prosecute somebody who has engaged in conduct which creates a serious, a risk of serious physical injury, an imminent risk, a risk of death, that some of these don't really rise to that level, at least in what would have been foreseeable by the actor. We have got to agree with your reading of these cases in order for you to prevail. Well, I think the BIA is the one that actually should be analyzing. You want a subreman, but if you disagree with your reading of these New York cases,  well, I think there still may be, but again, under Silva-Trevino 3, just going back to my point, there are these two ways of analyzing. One is the realistic possibility, one is the minimal conduct. When you look again at the case I cited on page 9 of my brief, from this circuit it looks like they are talking way more about minimal conduct, and again, the deference they give is not in that instance to the BIA, it's to the Supreme Court of the State of Connecticut where they have certified a decision on how to analyze the criminal law. Correct me if I'm wrong here, but my understanding was that minimal conduct, conduct that doesn't fit within the generic term, is analyzed in terms of reasonable possibility. In other words, you just can't use your imagination to come up with minimal conduct. I don't think there's a big difference. And I think realistic possibility is how you think about minimal conduct. I agree with that, but that brings me to the Hernandez case, which was cited by the BIA and by the government who said it was overturned on other grounds. The other grounds was that the Fifth Circuit said they applied the wrong test, but they didn't say you applied the realistic probability, they say you applied the realistic probability test and that was the wrong test, but they didn't apply either test. So I don't know what happened on remand there, but I would say that's what the BIA did here as well. They didn't apply either test in the decision they made on November 3rd after Silva Trevino came out three weeks earlier. They didn't look at what could or could not be prosecuted under New York law. They looked at the wording of the statute, the wordings of some of the cases that I, for one, had cited, the Fallot case and the other cases that appeared to apply an aggravating factor, not just reckless conduct that might create a risk, but that there had to be an aggravating factor. One of the judges said the imminent conduct thing is no— imminent level of serious conduct is no longer a requirement, but that came out of Hernandez, which was reversed. I'm not so sure that they would say that. And anyway, it seems hard to say that— Well, but that was reversed because they didn't use the right test. —injects a poisonous agent into a water supply is not engaged in reprehensible conduct simply because it may take a while before the effects of— the deadly effects of that are realized. I mean, I don't think that argument is going to be sound. But, I mean, we can debate all these hypotheticals. I know you want to reserve some rebuttal time, and we've kept you well past your time. Let's hear from your adversary, okay? Good morning, Your Honors. Margaret O'Donnell for the United States. I just want to address a couple of things brought up. First, the problem in Silva-Trevino and this whole history doesn't come from the categorical approach applied in cases. It comes from the modified categorical approach in divisible cases. How do we determine which charge the person was charged with so we can see if a CIMT applies or whatever? This case involves a very clear statute. It's not divisible. It's a misdemeanor. And it has recklessness as its intent and then a resulting consequence. The difficulty we get into, I think, is with the language because it is so inflammatory. When we talk about moral turpitude, one envisions a whole mass of horrible things. When we talk about reprehensible conduct, we all think we know what that is. In these cases, however, this court's role is to review the board's decision whether or not its determination was reasonable. The board cannot interpret New York state law, criminal law. So the board has to reach out to precedent and other things to be able to say, is this a crime involving moral turpitude? This is not a moral imposition on the petitioner in this case. This is an analysis, a legal analysis that does not involve equities. Looking at merely the statute of conviction doesn't matter who this person was. And this is important because this ensures that every person who comes to justice in an immigration case such as this is being treated the same way if we are looking only at the statute of conviction and not applying any objective or moral overtones here. But still, with a statute of conviction, and even though it's not divisible, the categorical approach still factors in. Oh, absolutely, Your Honor. And there is another role for this court in that. We would argue that the board correctly and reasonably found that this was a crime involving moral turpitude. You're allowed to make arguments before the BIA that there are applications of this particular statute that do not fit, do not generically apply here as a crime involving moral turpitude. You know, if somebody wants to come in and argue and is able to argue that there is a they prosecuted under this particular statute in New York, conduct which was not, was relatively mild compared to what happened, and still got a conviction, and then that argument can be made to the BIA, correct? So this categorical approach is relevant. And I would, I would. But they didn't, they didn't, your adversaries pointed out that there was no real analysis of that part of it in the BIA decision. Um, I don't know what was presented to, Your Honor. I don't know what was, The BIA decision was extremely reasonable. No, I'm not saying it's not, it's not reasonable. I'm saying that there doesn't seem to be a discussion of New York case law, and maybe nobody presented. Oh, no, it doesn't need to have a discussion of New York state law in its application. Because what's required under Silva-Trovino is that it refers to its own board precedent, which is exactly what it did. I don't think you're understanding our point. As the argument is being made to us today, it's look at these New York cases that are finding this statute violated with conduct that would not be viewed as malign per se. And so, it seems that the New York statute does not always require reprehensible conduct.  And it's pursued by saying, look, the board never considered that fact. It never considered that New York was, um, upholding convictions for these statutes without requiring malign per se, um, conduct. Now, you know, we went back and forth with Mr. Nutter on the persuasiveness of that argument, but that's what we're now asking you to address is how could the board make a decision on 120.20 being reprehensible conduct categorically when it didn't look at these cases, um, in which New York was applying it to the kind of conduct Mr. Nutter emphasizes. And I think the answer to that comes in the remainder of my argument is that reprehensible conduct is not the sole determining factor in the definition of in that list of things. One of the things that they itemize is a breach of a duty or responsibility to other citizens. And in those cases that he cites, almost every one of them talks about a deviation or, you know, a failure to meet a standard of care or a standard or duty to other citizens. Um, and so whether or not they, they reference a New York state case, they can still make a determination that from the recklessness, which is sufficiency I enter, to a consequence, well, they can make a reasonable determination. That's why I should say that this is a CIMT, but it's your application of your law that tells us. I'm afraid you're missing our point. The question is whether there is minimal conduct that New York could prosecute under this statute, that is, of which there is a realistic possibility of occurring that would not satisfy CIMT. And there is no discussion of that. That's my only concern. I do understand that. It's very reasonable. And if they, if they, if, if, if there's one case in which they can come up with, it seems to me, that, uh, there was a action that was not, not only not malum per se, but not particularly dangerous, uh, and, uh, and, uh, and, and yet they prosecuted successfully under that statute, then, then under the categorical approach, you can't use the statute. Uh, and, uh, that is, uh, that's, and that's the question. Now we don't, uh, there's a real question in this case as to whether they've, they've made that showing. Uh, but my question is why the BIA didn't, didn't consider this point. I think because what the BIA is doing is looking at the elements, trying to parse the elements. So we've got the scienter and we've got injury, physical injury, or however it's phrased. I understand that, but it seems to me, we may be talking past each other here because we may be, but I, I cannot in writing my brief, I did try to imagine, okay, what under this statute, what would not be a CIMT? And I was really alarmed by it because your felony reckless endangerment charge traces the language of CIMT. So I'm like, why would this be a CIMT? So I had to teach myself this, but I couldn't think of anything where I could come in and act recklessly with an intent to take an action, which resulted in somebody else's injury, where I couldn't have been found guilty of a CIMT that I breached the duty. And I see my time is up. Not quite. You still have another two minutes, but you can wave it. It's up to you. You have the yellow light on. Oh, great. Thank you. So it's up to you. No, I'm happy to take any questions you'd like on this. Thank you. We appreciate it. Thank you. Mr. Nutter, you reserve two minutes. Sorry. I mean, I do think the issue has been well defined. The only comment I would make really, I guess, in rebuttal is that in the list of things that go into the definition of what is the reprehensible conduct, this duty to other citizens, I'm not sure that's supposed to stand out as a separate alternative as opposed to define, showing the, in other words, using the list as a whole to show what is intended by reprehensible moral conduct as opposed to just parsing out some particular thing. Let me just understand the argument. And you started off by asking for a remand, which I appreciate. But are you suggesting, just to pick up on something that your adversary said, that in every one of these cases, the BIA needs to survey the applicable state law and prosecutions within that state to determine whether it meets the, in our case, the minimum conduct plus realistic probability test? Yes. That's what we were doing before. Quite common for us to meet, we as immigration lawyers. But as a practical matter, the BIA doesn't do it. The lawyer for the petitioner does it. Correct. And did that occur here before the BIA? Well, that's why I explained the timing. I was a lawyer. I filed a brief during the period of time that Silva Trevino had been abrogated by the attorney general. A year later, Silva Trevino 3 came out. And then within weeks, the BIA came out with this decision. So I suppose I could have tried to run into the BIA and say, could you please listen to some other arguments? But no. At the time that I filed the brief in September of 2015 to the BIA, Silva Trevino was not good law. Silva Trevino won. And whatever the reasons for that were, it was considered vacated. But the BIA here relied on Silva Trevino. Well, they referred to Silva Trevino 3 in their decision. But then I believe they didn't then actually follow what they say they're following. I mean, in a footnote, I think. Nobody filed supplemental briefs based on it or anything like that, right? No. I mean, we filed a petition for review. Yeah. I think we understand the party's arguments. We're going to take your case under advisement. And we'll try and get you a decision soon. The final case on our calendar, Ulrich v. Moody's Corporation, is submitted. And so we stand adjourned. Thank you.